IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| Rondell T. Trapp, | ) |
|                  Plaintiff, | ) C/A No. 0:10-3301-MBS |
| vs. | ) **OPINION AND ORDER** |
| Jeff Tolbert, Jeff Spires, and Fairfield County Sheriff Herman Young, | ) |
|                  Defendants. | ) |

Plaintiff Ronald T. Trapp filed a complaint on December 31, 2010, against Defendants Jeff Tolbert, Jeff Spires, and Sheriff Herman Young, all members of the Fairfield County Sheriff's Office. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, 1985, and 1986, asserting that Defendants violated his constitutional rights in various respects. Plaintiff also asserts state law claims.

This matter is before the court on Defendants' motion for summary judgment, which motion was filed February 28, 2012. Plaintiff filed a memorandum in opposition on April 3, 2012, to which Defendants filed a reply on April 12, 2012. Plaintiff filed a surreply on April 24, 2012. The court held a hearing on June 4, 2012. Upon review of the pleadings, motions, applicable law, and upon consideration of arguments presented by counsel, the court concludes that Defendants' motion for summary judgment should be granted.

I. FACTS

On May 28, 2009, two men, with their faces covered, forced their way into the house of Antonio Crumblin demanding money. Crumblin stabbed one of the men. Crumblin was shot in the

hand and back. The two men escaped with cell phones and a set of car keys. Crumblin ran to a neighbor's house to call 911. Deputies responding to the call located the wounded man, Jermaine Belton, not far from Crumblin's house and transported him to the hospital.

After Crumblin was transported to the hospital, he gave a statement identifying Jarritt Rodgers as having been in the street when Crumblin ran to the neighbor's house. Crumblin also stated that he had recognized the voice of Brandon McGoogan. He did not know the name of the man he stabbed. Statement of Crumblin, ECF No. 36-2, 10. Defendant Spires presented this information to a magistrate, and obtained arrest warrants for Rodgers, Belton, and McGoogan for burglary first degree, petit larceny, and assault and battery with intent to kill.

Later the same day, Belton was interviewed and agreed to write a statement regarding his involvement in the case. Belton identified Jarritt Rodgers, but denied that McGoogan was the third assailant. Instead, Belton stated the third assailant was an individual known to Belton only as "Buddy." Belton stated that the men had gone to Crumblin's house to steal drugs, and that Rodgers had not gone inside because he believed Crumblin would recognize him. Belton stated that both he and "Buddy" had discharged their weapons. Statement of Belton, ECF No. 36-2, 22. Defendant Spires commenced investigating the identity of "Buddy." Another officer informed Defendant Spires that Plaintiff went by the name of "Buddy." Later the same day, Belton was released from the hospital and transported to the Sheriff's office, where he identified Plaintiff from a photograph as "Buddy." Defendant Spires obtained new warrants for Plaintiff and requested that the magistrate void the warrants for McGoogan. Affidavit of Jeff Spires, ¶¶ 9-12, ECF No. 36-2, 2-3.

Rodgers was arrested on May 29, 2009, and identified Plaintiff and Belton as the other two individuals involved in the incident. Rodgers stated that they had gone to Crumblin's to obtain

2

marijuana. He was outside watching when he heard two shots and then three shots, so he took off running. Statement of Rodgers, ECF No. 36-2, 28. Rodgers pleaded to accessory to the incident on June 8, 2009. Belton pleaded guilty to burglary first degree, assault and battery with intent to kill, and petit larceny on September 3, 2009.

A grand jury returned a true bill against Plaintiff. Plaintiff was arrested on November 7, 2009, and proceeded to trial. When called as witnesses, neither Rodgers nor Belton would identify Plaintiff as the third assailant. See Affidavit of Jarritt Rodgers, ¶ 5, ECF No. 36-4 ("When I was called to trial, I did not want to identify Rondell Trapp, because I was concerned for my family, so I did not identify him as the person with us, even though he was."); Affidavit of Riley Maxwell, ¶ 8 ("When Belton testified at the Trapp trial he testified differently from the statement he had given to the Sheriff's deputies, his statements under oath during his plea, and what he had told me in preparation of the Trapp trial."). A jury found Plaintiff not guilty.

Plaintiff asserts that he was in Philadelphia at the time of the incident. He denies knowing Rodgers, and alleges that Belton told Defendants that "Buddy" is not Plaintiff, but that Defendants threatened him with life imprisonment if he did not falsely identify Plaintiff as "Buddy." Plaintiff contends he was arrested without probable cause (First Cause of Action); that Defendants conspired to violate his civil rights (Fifth Cause of Action); and that he was denied due process (Seventh Cause of Action). He also asserts state law claims for false arrest (Second Cause of Action); malicious prosecution (Third Cause of Action), civil conspiracy (Fourth Cause of Action); and abuse of process (Sixth Cause of Action).

## II. DISCUSSION

This matter is before the court on Defendants' motion for summary judgment. The court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

A.

Defendants first assert that they each are alter-egos of the state and, as such, are not "persons" amenable to suit under § 1983 in their official capacities. They also state that they are entitled to Eleventh Amendment immunity as arms of the state, to the extent they are sued in their official capacities. The court agrees. See Will v. Michigan State Police, 491 U.S. 58 (1989); Kentucky v. Graham, 473 U.S. 159 (1985); Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992). Defendants' motion for summary judgment is granted as to these issues.

B.

Defendants next state that Defendants Young and Tolbert cannot be held liable in their individual capacities under § 1983 because there are no factual allegations that these Defendants were involved in the investigation or prosecution of Plaintiff. Specifically, Defendants argue that Defendant Young had no involvement in the underlying events, and that Defendant Tolbert's only involvement was responding to the call on May 28, 2009, to gather information, and later to gather

4

evidence at Crumblin's residence.

Plaintiff concedes he has no evidence linking Defendant Tolbert to the alleged wrongdoing. However, Plaintiff asserts that Defendant Young can be held liable because he is responsible for policies, procedures, customs, and practices of the Sheriff's Department. However, Plaintiff does not identify what policies or practices were unconstitutional or explain how Defendant Young did anything to contribute the alleged constitutional deprivations or any other claim. Defendants' motion for summary judgment is granted as to this issue.

C.

Defendants next assert that Plaintiff fails to state a Fourth Amendment claim because his arrest was supported by probable cause. "'The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a particular description of the place to be searched, and the persons or things to be seized, and (3) be based upon probable cause, supported by Oath or affirmation.'" Antonio v. Moore, 174 F. App'x 131 (4th Cir. 2006) (quoting United States v. Clyburn, 24 F.3d 613, 617 (4th Cir.1994))(internal punctuation omitted). Because probable cause is an objective test, the court must examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act. United States v. Joy, 336 F. App'x 337, 341 (4th Cir. 2009) (quoting United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998)).

Defendants have produced the affidavit of Defendant Spires. Defendant Spires avers that on the morning of May 28, 2009, he received a call to respond to a report of a gunshot victim. Affidavit of Jeff Spires, ECF No. 36-2, ¶ 4. As noted above, Defendant Spires avers that other deputies apprehended Belton and took him to the hospital. Id. ¶ 6. He also states that other deputies

5

interviewed Crumblin, who implicated Rodgers and McGoogan. Based on this information, Defendant Spires obtained arrest warrants for Belton, Rodgers, and McGoogan. Id. ¶ 8. Thereafter, deputies spoke with Belton at the hospital. Belton identified Rodgers and a man named "Buddy." Id. ¶ 9. Defendant Spires was advised by another officer that Plaintiff went by the name of "Buddy." Id. ¶ 10. Defendant Spires states that Belton was brought to the Sheriff's office upon release from the hospital, where he identified Plaintiff from a photograph as the "Buddy" who had been with them the night of the robbery. Id. ¶ 11. Spires states that he went back to the magistrate and obtained arrest warrants for Plaintiff. Id. ¶ 12.

Plaintiff argues that his arrest was predicated on false evidence. According to Plaintiff, Defendants coerced Rodgers into stating Plaintiff was the third person involved. Plaintiff also contends that Belton was not shown a proper photographic lineup, but was shown only Plaintiff's photograph, to which he responded that Plaintiff was not the other person involved. In support of his argument, Plaintiff submits a sworn statement of Belton. Belton states he told "them" that Plaintiff was not Buddy. Belton says that "they" wrote a statement with Plaintiff's name and told him to sign it. Belton states, "I told them dat it was not him But they did not want to hear that." Belton claims that he did not want to go to jail, so he signed the statement while he was "sudated and druged out of my mind." Statement of Jermaine Belton, ECF No. 42-1, 1. According to Belton, "they said I was getting life if I did not testify that Buddy was [Plaintiff] and the mastermind behind this incident." Affidavit of Jermaine Belton, ECF No. 42-1, 2.

In response, Defendants have produced an affidavit of Riley Maxwell, the solicitor who prosecuted Plaintiff. Maxwell states that Belton pleaded guilty in September 2009 and did not dispute the facts surrounding the incident involving Crumblin, including the participation of both

6

Rodgers and Plaintiff in the crime. Affidavit of Riley Maxwell, ECF No. 44-1, ¶ 5. In addition, Maxwell interviewed Belton prior to Plaintiff's trial, and Belton never stated that he told the deputies that Plaintiff was not involved, or that he had been threatened to identify Plaintiff as his co-defendant. According to Maxwell, Belton stated that he knew Plaintiff and that Plaintiff was known as "Buddy." Id. ¶ 7. Belton changed his story at Plaintiff's trial. Id. ¶ 8.

Defendants further argue probable cause existed to arrest Plaintiff because Rodgers corroborated Belton's statement on May 29, 2012, the day after the warrants were issued. Relying on Brown v. Gilmore, 278 F.3d 362 (4th Cir. 2002), the Defendants note that probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. According to Defendants, at the time of the Plaintiff's arrest on November 7, 2009, probable cause existed not only based on Belton's statement but also on the statement of Rodgers, which was given after the magistrate issued the warrant.

The question is whether the information provided by Defendant Spires to the magistrate was sufficient to support the issuance of the warrant. The court is constrained to consider only information brought to the attention of the magistrate. See McGill v. Armstrong, 861 F.2d 265, *1 (4th Cir. 1988) (unpublished) (citing United States v. Jacobsen, 466 U.S. 109, 112 n.2 (1984)). Assuming that Belton's statement was coerced, Rodgers' later statement would not cure any alleged lack of probable cause at the time Defendant Spires obtained the arrest warrant. Id. The court is not persuaded by Defendants' argument.

The issue revolves around Plaintiff's attempt to create a genuine issue of material fact based upon Belton's recanting of his statement to law enforcement. In the summary judgment context, a court is not empowered to make credibility determinations. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986) ( "Credibility determinations ... are jury functions, not those of a judge . . . ."). In this case, however, the court is presented "not with a genuine issue of material fact, but with trying to determine which of several conflicting versions" of Belton's testimony is correct. See Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 976 (4th Cir. 1990) (citing Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984)). Belton's current affidavit runs counter not only to his statement to law enforcement, but, more important, to his pleading guilty under oath and affirming the participation of Plaintiff in the crime. See Goodwyn v. Siemens Dematic Corp., 1004 WL 6039455, *4 (E.D.N.C. July 21, 2004) (distinguishing between a conflict between an affidavit and a witness's prior deposition testimony, both under oath, and a conflict between an affidavit and earlier statement given to investigators; "the later type of conflict is for a factfinder to consider in assessing a witness's credibility"). Based on the totality of the circumstances, including Rodgers' statement and affidavit, the court finds that it would be justified in disregarding Belton's current affidavit. The court concludes that probable cause existed to support the arrest warrants. Thus, the court concludes that no reasonable jury could find in Plaintiff's favor as to his Fourth Amendment claim. Defendants' motion for summary judgment is granted as to this issue.

D.

Defendant argues that because Plaintiff cannot show lack of probable cause, he also cannot state a claim for false arrest. The court agrees.

The essence of the tort of false imprisonment consists of depriving a person of his liberty without lawful justification. To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful. McBride v. School Dist., 698 S.E.2d 845, 856 (S.C. Ct. App. 2010). The

8

fundamental issue in determining the lawfulness of an arrest is whether there was probable cause to make the arrest. Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise. Id.

For the reasons stated hereinabove, the court finds there was probable cause to support Plaintiff's arrest. Therefore, his restraint was lawful. Defendants' motion for summary judgment is granted as to this issue.

E.

Defendants next assert that Plaintiff has no legitimate evidence to establish a claim for conspiracy under 42 U.S.C. § 1985. The court agrees.

To state such a claim under § 1985(3), a plaintiff must prove the following: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. A Society Without A Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)). Moreover, the plaintiff "'must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights.'" Id. (quoting Simmons, 47 F.3d at 1377). The court must reject § 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts. Id. Rather, the plaintiff must demonstrate with specific facts that the defendants were motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiff of the equal enjoyment of rights secured by the law to all. Francis v. Giacomelli,

9

588 F.3d 186 (4th Cir. 2009) (quoting Simmons, 47 F.3d at 1376).

Plaintiff states that he was discriminated against based on his prior involvement with law enforcement, a class that "generally includes a disproportionate number of racial minorities." Mem. in Opp'n. 8; ECF No. 42, 8. Assuming for purposes of summary judgment Plaintiff is stating that he has been discriminated against on the basis of his race, and not on the non-basis of his prior brushes with the law, Plaintiff fails to produce specific facts to support his allegation. Plaintiff's entire response in opposition to Defendants' motion for summary judgment follows:

> First, there is evidence of the Plaintiff being discriminated against due to being part of a specific class. He was picked out based on his prior involvement with law enforcement. A class, which generally includes a disproportionate number of racial minorities. The Plaintiff has produced evidence that the Defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which deprived the Plaintiff of a constitutional right. Plaintiff's trial, was absent any evidence linking him to the alleged crime and required that Defendants act in concert with a multitude of others to bring the Plaintiff to trial.
>
> The Plaintiff has produced evidence of communications between the Defendants that give rise to an inference of an agreement to commit acts, to bring the Plaintiff to trial in the absence of proof. And, there is evidence of a conspiratorial objective to violate Plaintiff's rights and to try and convict him, knowing there was no legitimate identification.

Id.

Plaintiff's claim fails as conclusory and lacking in concrete facts. Defendants' motion for summary judgment is granted as to this issue.

F.

Defendants next assert that Plaintiff has not established a due process claim based on his contention that Defendants withheld exculpatory evidence, i.e., that Plaintiff was not identified via a photo lineup, but by use of a single photograph. The court agrees.

A Brady[1] violation is a necessary, but not a sufficient, condition for § 1983 liability on the part of the police.

> [T]he Brady duty is a no fault duty and the concept of constitutional deprivation . . . requires that the officer have intentionally withheld the evidence for the purpose of depriving the plaintiff of the use of that evidence during his criminal trial. This is what is meant by "bad faith." And that must be established on the basis of evidence, including among other things the nature of the withheld material, that would negate any negligent or innocent explanation for the actions on the part of the police. Of course the bad faith manipulation of evidence on the part of the police cannot be countenanced. Constitutional absolution for the concealment, doctoring, or destruction of evidence would fail to protect the innocent, fail to assist the apprehension of the guilty, and fail to safeguard the judicial process as one ultimately committed to the ascertainment of truth.

Jean v. Collins, 221 F.3d 656, 663 (4th Cir. 2000).

Plaintiff argues, in full:

> Defendant Spires admits to []an improper and suggestive photo lineup. Defendants falsified and manufactured evidence against Plaintiff, which evaporated at trial. Totally defeating the idea of due process. Defendants to this day have given Plaintiff no clue as to the process they used to obtain their identification of him and the coercive and indicative manner in which it was conducted. They were purposefully evasive because the process was utterly corrupted.

Mem. In Opp'n 9, ECF No. 42, 9.

Conclusory allegations of bad faith will not suffice to show a deprivation of due process.

Collins, 221 F.3d at 662. Defendants' motion for summary judgment is granted as to this issue.

G.

Defendants contend that Plaintiff fails to state a cause of action for malicious prosecution. The court agrees.

As an initial matter, the court notes that, to the extent Plaintiff seeks to assert a claim of

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

11

"constitutional malicious prosecution," no such cause of action exists. Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000) ("We now hold that § 1983 does not empower a plaintiff to bring a claim for malicious prosecution *simpliciter*. What is conventionally referred to as a "§ 1983 malicious prosecution" action is nothing more than a § 1983 claim arising from a Fourth Amendment violation.").

To the extent Plaintiff asserts a state law claim for malicious prosecution, he must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. Law v. South Carolina Dep't of Corrections, 629 S.E.2d 642, 648 (S.C. 2006). The court has found that Defendants have established probable cause. Moreover, there is no evidence of malice on the part of any Defendant in instituting the proceedings against Plaintiff. Defendants' motion for summary judgment is granted as to this issue.

H.

Defendants next contend that they are entitled to qualified immunity. The court agrees.

Qualified immunity protects government officials from liability for violations of constitutional rights that were not clearly established at the time of the challenged conduct. Guerrero v. Moore, 442 F. App'x 57, 58 (4th Cir. 2011) (citing Witt v. W. Va. State Police, 633 F.3d 272, 275 (4th Cir. 2011)). The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The defendants may nevertheless be shielded from liability for civil damages if their actions did not violate "'clearly

established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id.

Because the court discerns no constitutional deprivation the court's analysis ends at the first step of the analysis. Defendants' motion for summary judgment is granted as to this issue.

I.

Defendants assert that Plaintiff cannot prevail on his remaining state law claims, abuse of process and civil conspiracy. The court agrees.

1. The abuse of process tort provides a remedy for one damaged by another's perversion of a legal procedure for a purpose not intended by the procedure. Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, 567 S.E.2d 251, 253 (S.C. Ct. App. 2002). A plaintiff alleging abuse of process must assert two essential elements: (1) an ulterior purpose, and (2) a willful act in the use of process not proper in the conduct of the proceeding. Id. An ulterior purpose exists if the process is used to gain an objective not legitimate in the use of the process. Id.

According to Plaintiff, Defendants had an ulterior purpose of wrapping up the loose ends of their investigation "and thus garner acclaim and coerce plaintiff into a false guilty plea." Mem. In Opp'n 11, ECF No. 42, 11. The court finds no foundation in the record to support Plaintiff's allegation. Defendants' motion for summary judgment is granted as to this issue.

2. The tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009) (citing Vaught

v. Waites, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989)). A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint. Id. (citing cases). Moreover, because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action. Id. (citing Vaught, 387 at 95).

Plaintiff asserts that [t]he special damages of a conspiracy, involve the overwhelming nature of having a vast array of people and resources arrayed against you, an individual. Plaintiff was held six months to try and coerce a plea." Mem. In Opp'n 12, ECF No. 42, 12 Plaintiff fails to show facts either to show civil conspiracy or to establish special damages. Defendants' motion for summary judgment is granted as to this issue.

### III. CONCLUSION

For the reasons stated, Defendants' motion for summary judgment (ECF No. 36) is **granted**, and the case dismissed, with prejudice.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina

June 27, 2012.